

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

AUG 09 2017

JULIA C. DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **Case No. 7:16-cr-30026** |
| | ) | |
| V. | ) | 18 U.S.C. § 1962(d) |
| | ) | Racketeering Conspiracy |
| MICHAEL JONES | ) | (Count 1) |
| a/k/a "M. Stone" | ) | |
| (Count 1, 2) | ) | 21 U.S.C. §§ 846 and 841(a)(1) and |
| | ) | (b)(1)(A) and (b)(1)(C) |
| SHAWN PIERRE SMITH | ) | Conspiracy to Distribute and Possession |
| a/k/a "Pangz", a/k/a "Dimitrious Pierre | ) | with Intent to Distribute Heroin, Cocaine, |
| David", a/k/a "Dimitrious Davis", a/k/a | ) | Cocaine Base, Methamphetamine, |
| "Gene Pierre Bruce" | ) | "Suboxone", and Marijuana |
| (Count 1, 2) | ) | (Count 2) |
| | ) | |
| MICHAEL DEMONT DOVE | ) | 18 U.S.C. § 1959(a)(3) |
| a/k/a "Dugatti Black", a/k/a "Ducatti Black", | ) | Assault With a Dangerous Weapon In Aid |
| a/k/a "King Kaos", a/k/a "Juelz", a/k/a | ) | of Racketeering |
| "Flex", | ) | (Count 3, 6) |
| a/k/a "Mr. Prolific" | ) | |
| (Count 1, 2, 3, 4, 6, 7) | ) | 18 U.S.C. § 924(c)(1)(A)(i) |
| | ) | Use of a Firearm in Relation to a Crime of |
| TERRANCE NATHANIEL BROWN, JR. | ) | Violence |
| a/k/a "War", a/k/a "War Stone", a/k/a | ) | (Count 4, 5) |
| "Luciano" | ) | |
| (Count 1, 2, 3, 5, 6, 8) | ) | 18 U.S.C. § 924(c)(1)(A)(iii) |
| | ) | Use and Discharge of a Firearm in |
| CLIFFORD ALEXAND JENNINGS | ) | Relation to a Crime of Violence |
| a/k/a "Big Cliff", a/k/a "Wolverine", a/k/a | ) | (Count 7, 8) |
| "Ethiopia", a/k/a "Certified", a/k/a "Mr. | ) | |
| Certified" | ) | |
| (Count 1, 2) | ) | |
| | ) | |
| RONNIE MONROE NICHOLAS, Jr. | ) | |
| a/k/a "RG", a/k/a "Redd Gold", | ) | |
| a/k/a "Darren Lyle Nicholas" | ) | |
| a/k/a "Darren Lee Nicholas" | ) | |
| (Count 1, 2) | ) | |
| | ) | |
| CHRISTINE KELLY | ) | |
| (Count 2) | ) | |

1

JAYMESE RENEE JONES                )
a/k/a "Precious Stone"              )
(Count 2)                          )

## SUPERSEDING INDICTMENT

## COUNT ONE

### (Racketeering Conspiracy)

THE GRAND JURY CHARGES THAT:

### The Enterprise

1.  "Mad Stone Bloods," also known as "Mad Stone Blood Nation", "MSBN" and "MSB"

    (hereinafter "MSB"), is a national street and prison gang that operates in a number of

    states, including New York, New Jersey, Virginia, North Carolina, Georgia, Connecticut,

    Texas and Maryland.  MSB has multiple subgroups that use two names to identify

    themselves, one "official" name and one "nickname" associated with high end clothing

    lines. There are nine different male subgroups and one female group in MSB:

    a.   Mad Stone Bloods a/k/a "Gucci" (a subset with the same name as the

         overall organization, also called "the motherhood"),

    b.   Mad Stone Gangsters a/k/a "Prada",

    c.   Mad Stone Henchmen a/k/a "Tom Ford",

    d.   Mad Stone Kartel a/k/a "Fendi",

    e.   Mad Stone Dynasty a/k/a "Versace",

    f.   Mad Stone Money a/k/a "Louis (sic) Vuitton",

    g.   Mad Stone Killers a/k/a "Ralph Lauren",

    h.   Mad Stone Mafia a/k/a "Tommy Hilfiger",

    i.   Made Stone Empire, and

2

     j.     Mad Stone Divas a/k/a "Chanel", the female only subset of MSB.

2.  MSB leadership in New York has overall authority in all MSB matters, but generally allows subordinate leaders in the other states to make daily operational decisions. Significant decisions are typically made or approved by senior leadership in New York.

    a.  The leader of MSB is known as The Global Chairman. The Global Chairman of MSB resides in Brooklyn, New York. The Global Chairman has absolute authoritarian rule over all MSB members and activities nationwide, and has the authority to order or conduct any action related to MSB. The Global Chairman has the sole authority to open or close entire MSB "hoods" throughout the country, resolve political disputes, order or authorize violence on non-gang members and gang members, and order or authorize criminal activity, including murders, assaults, robberies, narcotics trafficking and firearms offenses. The Chairman has veto power over any action, decision or recommendation by the MSB Executive Council.

    b.  Below the Global Chairman is the MSB Executive Council in New York, which is comprised of a small group of senior gang leaders who report directly to the Global Chairman. The Executive Council makes high-level decisions concerning MSB members, activity and issues throughout the country, and makes recommendations to the Global Chairman.

    c.  In 2010, the Global Chairman authorized the opening of MSB in Virginia. The highest ranking MSB member in Virginia is known as the Chairman, also called "The Eye". The Chairman reports to, and takes instruction from, the Global Chairman and the Executive Council in New York. The Chairman is

the senior decision-maker for all MSB matters in Virginia, including gang-related acts of violence, narcotics trafficking activity, financial issues, gang communication code writing, leadership positions/promotions, recruitment, organization and other gang-related activity.

d. The Pyramid in Virginia is the governing body directly below the Chairman. The Pyramid plus two additional members form the Virginia MSB Executive Board, also known as "The Executive Five Hand". Similar to the New York Executive Council, the Virginia Executive Board is responsible for advising the Chairman, voting on matters of importance, and acts as a management intermediary between Virginia MSB members and the Chairman. If the Executive Board cannot come to a unanimous decision on a matter of importance, the Chairman makes the decision.

e. Below the Executive Counsel in New York and the Executive Board in Virginia are subgroups called "hoods". Each "hood" has a consistent, independent leadership structure.

f. MSB Virginia is divided into ten hoods: Mad Stone Bloods, Mad Stone Dynasty, Mad Stone Gangstas, Mad Stone Henchman, Mad Stone Kartel, Mad Stone Empire, Mad Stone Mafia, Mad Stone Jewels, Mad Stone Money, and Mad Stone Diva, an MSB set for Virginia females. Each hood contains an identical leadership structure, although each position may not be filled within each hood: Godfather, Co-Godfather, High Stains, Low Stains, 5-star generals, 4-star generals, 3-star generals, 2-star generals, 1-star generals, majors, lieutenants, sergeants and soldiers. Generally, only Godfathers and

4

Co-Godfathers can authorize an act of violence causing death or serious bodily injury. In Virginia, hoods are further divided into smaller groups called Diamond Districts. Diamond Districts were designed to help gang members verify and validate the claimed membership in MSB.

3.  MSB members must obtain approval from higher ranking MSB members for any significant gang activity, including acts of violence, narcotics trafficking, recruitment of new gang members and punishments for rule violations.

4.  To join MSB, members are approved or "blessed in," or required to complete an initiation process referred to as being "jumped in" or "beat in." During an initiation, multiple members of MSB surround the new member and punch and strike the new member for the duration of 21 or 31 seconds. The new member is permitted to fight back.

5.  After the initial recruitment or initiation, MSB members are required to complete a 21-day probationary period, known as the "21-day walk". During this time, members are evaluated by validated MSB members. Recruits are required to learn the history of MSB and the rules that govern, including: The 21 Rules and Regulations, The Diamond Defense Manifesto, The Code of Silence, and The Code of Conduct. Failure to learn this information could result in punishment that may include writing an essay or physical discipline in the form of corporal punishment or exercise. A rule "violation" occurs when a gang member fails to comply with gang rules.

6.  Members of MSB signify their membership in various ways. The gang's colors are red and black. MSB members sometimes wear red bandannas or "flags". Members often have tattoos to identify their association with MSB, including the MSB lettering, diamonds, dollar signs, five point starts or their MSB moniker or diamond district. MSB

5

members display distinctive hand signs and special handshakes to identify themselves and their rank to other MSB members.

7. MSB members use code words and phrases to communicate with each other. MSB members use code words and phrases to avoid detection by law enforcement. Code words and phrases are changed on occasion when MSB leadership believes that law enforcement may have identified or deciphered prior code lists. The code words are used to identify various things and people, including high ranking MSB members, criminal activity, places or other gangs. The code words and phrases are created and disseminated by MSB leaders in both New York and Virginia. Virginia MSB uses its own codes in addition to those created and authorized by New York.

8. MSB has historical rivalries with the Crips and Hispanic gangs, including MS-13. MSB has engaged in conflicts with other Bloods sets, including G Shyne and the Milla Time Bloods. MSB members do not use the letter "C,"; instead, they cross out the letter "C," or substitute the letter "K" in communications, or use the word "see" due to the rivalry with the Crips. MSB members also engage in acts of intimidation and violence toward rival gangs.

9. At all times relevant to this Indictment, in the Western District of Virginia and elsewhere, the defendants were members of MSB, a criminal organization, which is engaged in, among other things, acts involving murder and violence, robbery, firearms trafficking, wire fraud, mail fraud, credit card fraud, obstruction of justice, and narcotics trafficking.

10. MSB, including its leadership, membership, and associates, constitutes an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in-fact. The enterprise constitutes an ongoing organization whose members

6

function as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise is engaged in, and its activities affect, interstate and foreign commerce.

### Purposes of the Enterprise

11. The purposes of the MSB enterprise included the following:

    a. Preserve and protect the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence;

    b. Raise revenue to further MSB activities and enrich its leadership;

    c. Promote, support, and enhance the enterprise and its members' and associates' activities, including, but not limited to, acts related to murder, violence, mail fraud, wire fraud, credit card fraud, robberies, and drug trafficking;

    d. Share and disseminate information about the enterprise's plans and activities;

    e. Keep victims, potential witnesses, and community members in fear of the enterprise's members and associates, through violence and threats of violence; and

    f. Provide assistance to the enterprise's members and associates who commit crimes for, with, and on behalf of the gang, to hinder, obstruct, and prevent law enforcement authorities from identifying, apprehending, and successfully prosecuting and punishing the offenders.

### Manner and Means

12. The manner and means by which MSB members and associates conduct and participate in the conduct of the affairs of the enterprise includes, but is not limited to, the following:

a.  MSB members and associates meet regularly to discuss (*i*) obtaining money and property for the gang through narcotics trafficking, robbery and other criminal acts, (*ii*) violations of gang rules, (*iii*) the gang's reputation, and (*iv*) plans and agreements regarding future criminal activities, including acts of violence to retaliate against rivals.

b.  MSB members are required to pay money ("dues") to the leaders of the gang to remain in good standing and assist other gang members. Members who fail to pay dues can be disciplined and punished.

c.  Punishments for rule violations vary in severity and duration. Serious rule violations can result in serious bodily injury or death; such penalties must be authorized by a Godfather or Co-Godfather. "Snitching" – cooperating with law enforcement – is considered a most egregious offense and a violation of both the MSB Code of Conduct and the Code of Silence (MSB documents which govern rules of behavior for MSB members).

d.  MSB members communicate with leaders and other members by telephone, text messaging, e-mail, Facebook, letters, in-person meetings and other means of communication to discuss and coordinate the gang's criminal activities, and to receive support, encouragement, and approval for carrying out criminal activities. Higher ranking members must approve criminal activities that members and associates carry out.

e.  MSB members distribute and share firearms with other MSB members.

f.  MSB members share items, such as contraband cell phones in prisons, to help commit crimes for the gang.

8

g. MSB members traffic heroin, cocaine, crack, methamphetamine, marijuana, and other controlled substances on the streets and in Virginia Department of Corrections (DOC) facilities to earn money for the gang.

h. MSB members commit shootings, attempt murders and other acts of significant violence targeted at robbery victims, gang rivals, individuals who disrespect the gang, and those who gang leaders suspect have made false claims of gang membership/rank.

i. MSB members wear the gang's colors, exhibit gang tattoos, and use MSB handshakes and coded language to identify themselves and communicate with other MSB members.

<u>Role of the Defendants</u>

13. The role of the defendants includes, but is not limited to, the following:

a. MICHAEL JONES ("JONES"), a/k/a "M. Stone," is a high ranking MSB member in New York. Jones is the Godfather of Mad Stone Henchmen. JONES is known as the "Voice of Poppa Don", who is the National Chairman of MSB, and JONES is a member of the MSB Executive Council in New York.

b. SHAWN PIERRE SMITH ("SMITH"), a/k/a "Pangz," "Dimitrious Pierre SMITH," "Dimitrious SMITH," "Gene Pierre", "Dimitrious DAVID", is a member of MSB New York, with last known current rank as Co-Godfather of Mad Sone Bloods in New York.

c. MICHAEL DEMONT DOVE ("DOVE"), a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos," was the Co-Godfather of Mad Stone Henchmen (MSH), a subset of MSB Virginia, as recently as November 2015. Dove now reports directly to MSB leaders in New York.

d. TERRANCE NATHANIEL BROWN, JR. ("BROWN"), a/k/a "War," "War Stone," "Luciano", was the Acting Godfather of Mad Stone Empire, a subset of MSB Virginia, as recently as November 2015. BROWN currently holds no rank.

e. CLIFFORD ALEXAND JENNINGS ("JENNINGS"), a/k/a "Big Cliff," "Certified," "Wolverine," "Ethiopia", was the Co-Godfather of Mad Stone Henchmen, a subset of MSB in Virginia, as of October 2015. His current rank and membership status are unknown.

9

f. RONNIE MONROE NICHOLAS ("NICHOLAS"), a/k/a "RG", a/k/a "Redd Gold", a/k/a "Darren Lyle Nicholas," a/k/a "Darren Lee Nicholas", is the Godfather of Mad Stone Bloods, Gucci Subset, Virginia, and is responsible for all MSB related activities on the streets of Virginia.

g. Christine Kelly is a former Virginia Department of Corrections (DOC) Correctional Officer. As detailed below, while Kelly was employed as a correctional officer, Kelly was paid by MSB gang members to smuggle controlled substances into Virginia DOC correctional facilities and deliver the controlled substances to MSB gang leaders for further distribution within the prisons. While employed as a Virginia DOC correctional officer, Kelly also engaged in sexual relations with an MSB gang leader while that gang leader was an inmate within Virginia DOC.

h. Jaymese Jenee Jones, a/k/a "Precious Stone", was employed as a Correctional Officer with Virginia DOC, and worked at Buckingham Correctional Center. As detailed below, J. Jones is also an associate of MSB who, while employed as a Correctional Officer, conspired with others, including another Correctional Officer, to distribute controlled substances.

### The Racketeering Conspiracy

14. Beginning on a date unknown, but no later than in or about 2006, and continuing until on or about the date of this Indictment, in the Western District of Virginia and elsewhere, the defendants,

MICHAEL JONES, a/k/a "M. Stone";

SHAWN PIERRE SMITH, a/k/a "Pangz," "Dimitrious Pierre Smith," "Dimitrious Smith," "Gene Pierre";

MICHAEL DEMONT DOVE, a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos";

TERRANCE NATHANIEL BROWN JR., a/k/a "War," "War Stone," "Luciano";

CLIFFORD ALEXAND JENNINGS, a/k/a "Big Cliff,", "Certified," "Wolverine," "Ethiopia"; and

RONNIE MONROE NICHOLAS ("NICHOLAS"), a/k/a "RG", a/k/a "Redd Gold", a/k/a "Darren Lyle Nicholas," a/k/a "Darren Lee Nicholas"

and other persons known and unknown to the Grand Jury, being persons employed by and associated with MSB, described above, an enterprise engaged in, and the activities of

10

which affected, interstate and foreign commerce, did knowingly conspire with one another to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5), which consisted of multiple acts involving:

a. Murder, chargeable under Va. Code § 18.2-22, Va. Code § 18.2-31, Va. Code § 18.2-32, Va. Code § 18.2-25, Va. Code § 18.2-26 and the common law of Virginia; and

b. Robbery, chargeable under Va. Code § 18.2-22, Va. Code § 18.2-58, Va. Code § 18.2-26, and the common law of Virginia.

and multiple offenses involving:

c. 21 U.S.C. §§ 846, 841 and 841(b)(1)(A) (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Cocaine Base, Marijuana, and one or more kilograms of heroin, and Distribution and Possession with Intent to Distribute Cocaine, Marijuana, and Heroin);

and multiple acts indictable under:

d. 18 U.S.C. § 1341 (Mail Fraud); and

e. 18 U.S.C. § 1343 (Wire Fraud).

15. It was further a part of the conspiracy that the defendants knowingly agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the enterprise's affairs.

11

### Acts in Furtherance of the Conspiracy

16.   In furtherance of the conspiracy, and to achieve the object and purposes of the

conspiracy, the defendants and others known and unknown, committed acts in the

Western District of Virginia and elsewhere, including but not limited to the following:

### Violence

   a.   On or about August 1, 2013, BROWN and DOVE did willfully, deliberately, and

      with premeditation attempt to kill O.J in the commission of an attempted robbery.

   b.   On or about July 26, 2013 BROWN, DOVE and other MSB gang members, used

      firearms to rob three individuals of money, cell phones and personal items in the

      Norfolk, Virginia area.

   c.   On or about July 26, 2013, BROWN, DOVE and other MSB gang members used

      firearms in an attempted armed robbery of a tattoo parlor in the Norfolk, Virginia

      area.

   d.   On or about August 1, 2013, BROWN and DOVE used firearms in an attempt to

      rob a male Victim in the Norfolk, Virginia area.

   e.   On or about August 1, 2013, BROWN and DOVE used firearms in an attempt to

      murder a male Victim in the Norfolk, Virginia area.  BROWN and DOVE

      discharged their weapons and shot the Victim numerous times.  The Victim was

      also pistol whipped in the head.

### Narcotics

   f.   From in or about 2011, and continuing to in or about December 2016, in the

      Western District of Virginia and elsewhere, the defendants, JONES and

12

JENNINGS, did knowingly and intentionally conspire, with each other, and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute, and distribute, one kilogram or more of a mixture and substance containing a detectable amount of heroin.

g. From in or about January of 2011, and continuing to in or about December 2016, M. JONES, JENNINGS, T. BROWN Jr., DOVE, SMITH and NICHOLAS, conspired with each other and other persons known and unknown to the Grand Jury to possess with the intent to distribute, and distribute, a mixture and substance containing a detectable amount of the following controlled substances: cocaine, cocaine base ("crack"), heroin, marijuana, methamphetamine, Molly (MDMA) and Suboxone.

h. From in or about 2010 and continuing until in or about December 2016, Virginia DOC employees, including correctional officers and an inmate counselor, smuggled controlled substances, cellular telephones, a charger, a Bluetooth wireless device, tools, and other contraband items into various Virginia DOC correctional facilities and delivered these items to various MSB gang members who were inmates in Virginia prisons.

i. From in or about 2011 and continuing until in or about December 2016, at Greensville Correctional Center, T. BROWN Jr., and other MSB gang members conspired to distribute heroin, cocaine and marijuana inside Greensville Correctional Center.

j. In or about 2011 and 2012, Kelly was employed as a corrections officer with the Virginia DOC.  She worked at Lawrenceville Penitentiary in Lawrenceville,

Virginia, and Greensville Correctional Center in Jarratt, Virginia. While serving as a correctional officer, Kelly engaged in a sexual relationship with an inmate who was also an MSB gang leader. Taking advantage of her position of trust as a correctional officer, Kelly smuggled controlled substances into the correctional facilities and distributed the controlled substances to multiple MSB gang leaders. MSB gang leaders paid Kelly for smuggling the contraband substances into the prison facilities for them.

k. From in or about 2013 through in or about 2015, M. JONES and others known and unknown to the Grand Jury conspired to distribute heroin to T. BROWN Jr., an MSB member in Virginia.

l. From in or about 2013 through in or about 2015, M. JONES and others known and unknown to the Grand Jury conspired to distribute heroin to JENNINGS, an MSB member in Virginia. In or about 2014, T. BROWN, and others known and unknown to the Grand Jury transported firearms from Virginia to New York, and delivered the firearms to M. JONES, SMITH and other MSB members in New York, and traded the firearms for controlled substances, including marijuana and cocaine.

m. T. BROWN and others known and unknown to the Grand Jury transported narcotics back to Virginia and distributed them. In or about late 2014, JENNINGS obtained approximately five ounces of heroin, per transaction. Before he redistributed the heroin to others, JENNINGS cut the heroin with other substances, which increased the volume of the heroin to approximately nine ounces of heroin for redistribution in Virginia.

14

n. From in or about January 2015 to in or about March 2015, JENNINGS sold at least one ounce of heroin, per week, to another MSB gang member, who redistributed the heroin to customers in Virginia.

o. In or about 2015, M. JONES, DOVE and others known and unknown to the Grand Jury conspired to distribute fourteen grams of heroin from New York to be distributed in Virginia.

p. In or about January 2015, JENNINGS, DOVE, and others known and unknown to the Grand Jury conspired to distribute heroin.

q. In or about January of 2015, at least two senior MSB gang members traveled from New York to Virginia, and delivered at least four ounces of heroin to JENNINGS.

r. In or about January 2015, JENNINGS used and carried a firearm in connection with a drug trafficking crime.

s. On or about January 30, 2015, JENNINGS distributed approximately 3.5 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

t. On or about February 5, 2015, JENNINGS distributed approximately 3.5 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

u. On or about February 12, 2015, JENNINGS distributed approximately 7 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

v. On or about February 24, 2015, JENNINGS distributed approximately 7 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

w. On or about March 13, 2015, JENNINGS distributed approximately 14 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

x.  On or about May 27, 2015, JENNINGS distributed approximately 8 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

y.  On or about August 18, 2015, JENNINGS sold to another MSB gang member, a firearm, to wit: a black, Rock Island Armory, .38 caliber revolver loaded with six rounds.

z.  On or about August 18, 2015, JENNINGS unlawfully used and carried a firearm during and in relation to a drug trafficking crime and possessed a firearm in furtherance of a drug trafficking crime.

aa. On September 11, 2015, JENNINGS distributed approximately 6.7 grams of heroin to another MSB gang member for the purpose of earning money for MSB.

bb. In 2016, M. JONES, DOVE and others known and unknown to the Grand Jury conspired to distribute heroin from New York to Virginia for the benefit of MSB.

cc. On or about September 12, 2016, in the Hopewell, Virginia area, NICHOLAS sold heroin to another MSB gang member for the purpose of generating revenue for MSB.

dd. In or about September of 2016, a Virginia DOC Correctional (henceforth "CO-1") an MSB gang member incarcerated at Buckingham Correctional Facility, located in the Western District of Virginia, and others, developed a plan to obtain controlled substances from MSB gang members on the streets, and smuggle those controlled substances into Buckingham Correctional Facility for distribution and use within the Virginia prison.

ee. On or about September 16, 2016, Virginia DOC Correctional Officers J. Jones, CO-1, and an MSB gang member met NICHOLAS in the Petersburg, Virginia.

CO-1 drove the vehicle to meet NICHOLAS, while J. Jones and other gang members rode in the vehicle as passengers. During the meeting with NICHOLAS, CO-1 gave drug purchase money to NICHOLAS, and NICHOLAS gave crack cocaine and powder cocaine to CO-1. J. Jones and CO-1 intended to distribute the controlled substances to others. After obtaining the narcotics, J. Jones drove the vehicle and CO-1 rode as a passenger. Shortly thereafter, law enforcement encountered J. Jones and CO-1, and seized crack cocaine, powder cocaine, and marijuana from the person of CO-1 before they could distribute the controlled substances to others.

### Wire Fraud, Mail Fraud and Credit Card Fraud

ff. In or around 2015, SMITH, T. BROWN, and others known and unknown to the Grand Jury conspired to engage in a scheme involving wire fraud, mail fraud and credit card fraud in Virginia and New York. In furtherance of this scheme, the conspirators unlawfully obtained credit card numbers that belonged to victims, and used those credit card numbers to purchase items from retailers, including The Home Depot, Domino's Pizza and liquor stores. Conspirators made these purchases by calling the retailer and providing the victim's credit card number over the phone. After obtaining the purchased items, the conspirators used Federal Express (FedEx) to ship purchased items to one another. After they obtained the purchased items, the conspirators sold them for cash. The conspirators were paid for participating in this scheme.

17. All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

### (Drug Conspiracy)

18.    The factual allegations contained in paragraphs 1 through 16 are re-alleged and incorporated as if fully set out herein.

19.    From in or about 2010, and continuing to in or about December 2016, the defendants, MICHAEL JONES, a/k/a "M. Stone"; SHAWN PIERRE SMITH, a/k/a "Pangz," "Dimitrious Pierre Smith," "Dimitrious Smith," "Gene Pierre"; CLIFFORD ALEXAND JENNINGS, a/k/a "Big Cliff," "Certified," "Wolverine," "Etheopia"; TERRANCE NATHANIEL BROWN Jr., a/k/a "War," "War Stone," "Luciano"; MICHAEL DEMONT DOVE, a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos"; RONNIE MONROE NICHOLAS, JR., a/k/a "RG," a/k/a "Darren Lyle Nicholas," a/k/a "Darren Lee Nicholas," CHRISTINE KELLY, JAYMESE RENEE JONES, a/k/a "Precious Stone" and others known and unknown to the Grand Jury, did knowingly and intentionally conspire together and with each other, and with other persons known and unknown to the Grand Jury, to commit one or more of the following offenses against the United States:

       a.    to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 United States Code Section 841(a)(1);

       b.    to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

       c.    to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

18

    d.  to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

    e.  to distribute and possess with the intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

    f.  to distribute and possess with the intent to distribute buprenorphine (and naloxone ("Suboxone"))[1], a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

20.    It was a part of the conspiracy that defendants M. JONES and JENNINGS knowingly and intentionally conspired with each other and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute, and distribute, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

21.    All in violation of Title 21, United States Code, Section 846.

## COUNT THREE
### (Violent Crime in Aid of Racketeering)

22.    The factual allegations contained in paragraphs 1 through 13 and paragraph 16 are re-alleged and incorporated as if fully set out herein.

23.    At all times relevant to this Indictment, MSB, including its leadership, membership, and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise

---

[1] The combination of buprenorphine and naloxone is marketed and sold under the brand name "Suboxone".

constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

24.     At all times relevant to this Indictment, MSB, the above-described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), which consisted of multiple acts involving:

  a.     Murder, chargeable under Va. Code §§ 18.2-32, 18.2-26, and 18.2-22, and the common law of Virginia;

  b.     Robbery, chargeable under Va. Code §§ 18.2-22, 18.2-58, and 18.2-26, and the common law of Virginia; and

multiple offenses involving:

  c.     21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, Cocaine, Cocaine Base, Heroin, Suboxone and Methamphetamine) and 21 U.S.C. § 841 (Distribution of and Possession with Intent to Distribute Marijuana, Cocaine, Cocaine Base, Heroin, Suboxone and Methamphetamine).

25.     On or about July 26, 2013, in the Western District of Virginia, Eastern District of Virginia and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the MSB gang, and for the purpose of gaining entrance to and maintaining and increasing position in the MSB gang, an enterprise engaged in racketeering activity, the defendants MICHAEL DEMONT DOVE, a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos," and TERRANCE NATHANIEL BROWN Jr., a/k/a "War," "War Stone," "Luciano," aided and abetted by others known and unknown, did assault victims

T.V.S., S.A.J. and G.L. with a dangerous weapon, that is, a firearm, in violation of Va.
Code, §§ 18.2-51, 18.2-53.1 and 18.2-58.

26.   All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT FOUR

### (Use of Firearm During Crime of Violence)

27.   On or about July 26, 2013, in the Western District of Virginia, Eastern District of
Virginia and elsewhere, the defendant MICHAEL DEMONT DOVE, a/k/a "Dugatti
Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos," did knowingly
carry and use a firearm during and in relation to a crime of violence for which he may be
prosecuted in a court of the United States, that is, the crime of violence described above
in paragraphs 22-26 (Count Three), which was a violent crime committed in aid of
racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(3).

28.   All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT FIVE

### (Use of Firearm During Crime of Violence)

29.   On or about July 26, 2013, in the Western District of Virginia, Eastern District of
Virginia and elsewhere, the defendant TERRANCE NATHANIEL BROWN Jr., a/k/a
"War," "War Stone," "Luciano," did knowingly carry and use a firearm during and in
relation to a crime of violence for which he may be prosecuted in a court of the United
States, that is, the crime of violence described above in paragraphs 22-26 (Count Three),
which was a violent crime committed in aid of racketeering activity, in violation of Title
18, United States Code, Section 1959(a)(3).

30.   All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT SIX

### (Violent Crime in Aid of Racketeering)

31.  Paragraphs 1 through 13, paragraph 16 and paragraphs 23 through 24 are re-alleged and incorporated as if fully set out herein.

32.  On or about August 1, 2013, in the Western District of Virginia, Eastern District of Virginia and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the MSB gang, and for the purpose of gaining entrance to and maintaining and increasing position in the MSB gang, an enterprise engaged in racketeering activity, the defendants MICHAEL DEMONT DOVE, a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos," and TERRANCE NATHANIEL BROWN Jr., a/k/a "War," "War Stone," "Luciano," aided and abetted by others known and unknown, did assault victim O.J. with a dangerous weapon, that is, a firearm, in violation of Va. Code, §§ 18.2-51.

33.  All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT SEVEN

### (Use of Firearm During Crime of Violence)

34.  On or about August 1, 2013, in the Western District of Virginia, Eastern District of Virginia and elsewhere, the defendant MICHAEL DEMONT DOVE, a/k/a "Dugatti Black," "Ducatti Black," "Mr. Prolific," "Juelz," "Flex," "King Kaos," did knowingly carry and use and discharge a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, the crime of violence described above in paragraphs 31-33 (Count Six), which was a violent crime committed

22

in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(3).

35.    All in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## COUNT EIGHT

### (Use of Firearm During Crime of Violence)

36.    On or about August 1, 2013, in the Western District of Virginia, Eastern District of Virginia and elsewhere, the defendant TERRANCE NATHANIEL BROWN Jr., a/k/a "War," "War Stone," "Luciano," did knowingly carry and use and discharge a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, the crime of violence described above in paragraphs 31-33 (Count Six), which was a violent crime committed in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(3).

37.    All in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## NOTICE OF FORFEITURE

### RICO Forfeiture

1.    The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963 and Title 28, United States Code, Section 2461(c). Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count 1 of this Indictment.

2.　　　The defendants,

**MICHAEL JONES**
**SHAWN PIERRE SMITH**
**MICHAEL DOVE**
**TERRANCE BROWN**
**CLIFFORD JENNINGS**
**and**
**RONNIE MONROE NICHOLAS**

i.　　have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.　　have an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2);

iii.　　have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.　　　The interest of the above-named defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include the amount of gross proceeds received by the defendants derived from the racketeering activities as alleged in Count One of this Indictment.

4.　　　If any of the property described in paragraphs 2 and 3 above, as a result of any act or omission of a defendant --

24

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 2 and 3 above.

5.     The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

## Controlled Substances Forfeiture

1.     Upon conviction of Count Two alleged in this indictment, the defendants shall forfeit to the United States:

a.     any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense, pursuant to 21 USC Section 853(a)(1).

b.     any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said offenses, pursuant to 21 USC Section 853(a)(2).

c.     any firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and/or raw materials as described in 21 USC § 881(a)(1) and (2), and any proceeds traceable to such property, pursuant to 21 USC § 881(a)(11) and 28 USC §2461(c).

d. .   any firearm and ammunition involved or used in the commission of said offenses, or possessed in violation thereof, pursuant to 18 USC § 924(d) and 28 USC § 2461(c).

25

2.   If any of the above-described forfeitable property, as a result of any act or omission:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of the above-described forfeitable property, pursuant to 21 USC Section 853(p).

A TRUE BILL, this 9th day of August, 2017

            /s/FOREPERSON
            FOREPERSON

            RICK A. MOUNTCASTLE
            Acting United States Attorney

            Grayson A. Hoffman
            Assistant United States Attorney
            Virginia Bar No. 73726

            DAVID L. JAFFE
            Acting Chief
            U.S. Department of Justice
            Organized Crime and Gang Section

            Marianne Shelvey
            Trial Attorney
            United Stated Department of Justice
            Organized Crime and Gang Section
            Massachusetts State Bar No. 64243

26